**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SIEMENS BUILDING TECHNOLOGIES, INC., f/k/a CERBERUS PYROTRONICS, : : : Plaintiff, : : v. : : PNC BANK, N.A.; MICHELLE WILLIAMS; ELOISE TANNER; & JOHN DOES 2 through 10, : : : Defendants. : | Civil Action No. 02-868 (KSH) **OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

Plaintiff Siemens Building Technologies, Inc. ("Siemens") commenced the above-captioned action by filing an eight-count complaint against three defendants. Defendant PNC Bank, N.A. ("PNC") moves for summary judgment in its favor as to Count III of the complaint.[1]

---

[1] PNC makes the representation that Siemens will voluntarily dismiss Count IV of the complaint prior to the disposition of this motion. (Deft's Brief in Support of Motion for Summary Judgment, at 1 n. 1.) This representation is supported by Siemens' assertion that Count III is the only remaining claim against PNC. (Pltf's Brief in Opposition and in Support of Cross-Motion, at 2.) Pursuant to this representation, the order accompanying this opinion directs plaintiff to file a proposed order voluntarily dismissing Count IV.

-1-

Siemens filed opposition to PNC's motion and now cross-moves for summary judgment on the same Count.  For the reasons discussed below, the Court **grants** summary judgment in favor of PNC and **denies** Siemens' cross-motion.

## BACKGROUND

The following facts are undisputed.  Defendant Michelle Williams worked as a payroll assistant at Siemens' Cedar Hill, New Jersey facility.  During the course of her employment, Williams utilized various payroll schemes to defraud Siemens by falsifying payroll information, creating fraudulent payroll checks made payable to other employees, and forging the employees' endorsements on these checks, enabling her to cash them.  In total, Williams forged 639 checks totaling just over $300,000.00.

Investigations that Siemens undertook, both internal and external, revealed that Williams cashed all or most of the 639 checks at one of two PNC branch locations, where they were processed by the same teller, Eloise Tanner, who is also a defendant on the complaint.  Tanner held the position of head bank teller, and as such, had higher check cashing authority and was able to cash non-PNC customer checks.  Siemens alerted PNC to Williams' payroll schemes and Tanner's possible involvement.  Although Tanner has refused to accept any responsibility, for purposes of these pending motions, PNC concedes that Tanner cashed the checks presented by Williams with the knowledge that they were fraudulent in some form.  (Pltf's Brief in Support of Motion for Summary Judgment, at 5.)

**STANDARD OF REVIEW**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact" such that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At the summary judgment stage, the Court's "function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In so doing, the Court must construe the facts and all inferences that reasonably could be drawn therefrom in a light most favorable to the non-moving party. Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002).

A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. The party opposing a summary judgment motion "may not rest upon the mere allegations or denials of his pleading"; rather, he must set forth specific facts and provide sufficient evidence showing that there is a genuine issue for trial. Id. at 248-49. "Substantive law will identify which facts are material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" will defeat a summary judgment motion. Id. at 248. In other words, disputes over "irrelevant or unnecessary" facts will not preclude the Court from granting summary judgment in the moving party's favor. Id.

**DISCUSSION**

Count III alleges that under the doctrine of respondeat superior PNC is vicariously liable to Siemens for the deliberate fraud of its employee, Tanner. (Compl. ¶ 22.) PNC asserts that Count III must be dismissed, as a matter of law, because Tanner's fraudulent conduct was outside

the scope of her employment. (Deft's Brief in Support of Motion for Summary Judgment, at 2.) Siemens relies on the agency principal of apparent authority and argues that PNC is liable for Tanner's tortious conduct because her position enabled her, while apparently acting within her authority, to commit fraud. (Pltf's Brief in Opposition and in Support of Cross-Motion, at 11.) In analyzing these positions, the Court applies New Jersey law. Robeson Industry Corp. v. Hartford Accident & Indemnity Co., 178 F.3d 160, 165 (3d Cir. 1999) (in diversity cases a court must apply the law of the forum state to the substantive claim).

    A.    PNC's Motion for Summary Judgment Arguing that the Doctrine of Respondeat Superior Does Not Apply

"Under the doctrine of respondeat superior, an employer is liable to a third party for the torts of one of its employees if that employee is acting within the scope of his or her employment." Abbamont v. Piscataway Tp. Bd. of Educ., 138 N.J. 405, 416, 650 A.2d 958 (1994) (citing Di Cosala v. Kay, 91 N.J. 159, 168-69, 450 A.2d 508 (1982)) (internal quotations omitted). An employee's conduct is deemed to be within the scope of employment if the conduct: (1) is of the kind he/she was employed to perform; (2) occurred substantially within the authorized time and space limits; and (3) was actuated, at least in part, by a purpose to serve employer. Abbamont, 138 N.J. at 416; DiCosala, 91 N.J. at 169 (citing Restatement (Second) of Agency § 228 (1957) (alteration in original)). "Conduct of [an employee] is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Carter v. Reynolds, 175 N.J. 402, 411-412, 815 A.2d 460 (2003) (citing Restatement (Second) of Agency § 228) (internal quotations omitted). Thus unauthorized conduct may be deemed within the scope of

employment if it is similar to or incidental to the conduct authorized. Id. Of significance to the legal dispute between the parties, if certain criteria are satisfied, even intentional torts and crimes may be considered within the scope of employment. Roth v. First Nat'l Bank of N.J., 169 N.J. Super. 280, 286, 404 A.2d 1182 (App. Div.1979).

Presented with the undisputed fact that Tanner knowingly and intentionally processed and cashed fraudulent checks presented by Williams, no reasonable jury could conclude that Tanner was motivated, in whole or in part, to serve PNC's interests. And of course, intentionally and knowingly cashing 639 fraudulent checks, payable to 125 different people, that were presented by only one person, Williams, constitutes criminal, unauthorized conduct.

However, Siemens argues that, while Tanner's conduct was not authorized, it nevertheless could fall within the scope of her employment because it did not involve a "per se tortious act." Rather, according to Siemens, Tanner's conduct was "nothing more than cashing checks, an activity which was not only a clear part of her job description and duties, but which the Bank itself conceded is generally performed in furtherance of the economic and relationship-building interest and goals of PNC Bank." (Pltf's Brief in Opposition and in Support of Cross-Motion, at 7.) At the very least, Siemens asserts, this interpretation of her activity presents a jury question. (Id.)

But if there is clear indication that the act done is sufficiently different from the act authorized, there is no jury question. "The question whether or not the act done is so different from the act authorized that it is not within the scope is decided by the court if the answer is clearly indicated; otherwise, it is decided by the jury." Mason v. Sportsman's Pub, 305 N.J. Super 482, 499, 702 A.2d 1301 (App. Div. 1997) (citing Restatement (Second) of Agency, §

228(1)(d) cmt. d (1958)) (internal quotations omitted).  The undisputed facts in this case, viewed in the light  most favorable to Siemens, indicate clearly that Tanner's activity in cashing the phony checks was "sufficiently different" from her authorized duties.  Bank tellers commonly cash and process checks for customers of a bank; knowingly cashing fraudulent checks is not the same thing and is hardly "ministerial."  Banks work hard to prevent and deter fraudulent acts and neither train, expect nor authorize their employees to engage in fraudulent conduct for criminal gain.  Consequently Tanner's acts are outside the scope of her employment and the doctrine of respondeat superior, as applied by New Jersey courts, is inapplicable.

In the alternative, Siemens asks the Court to remand Count III to state court pursuant to 28 U.S.C. § 1367(c)(1-4).  (Pltf's Brief in Opposition and in Support of Cross-Motion, at 10.) Siemens argues the Court should decline to exercise supplemental jurisdiction because: (1) "[Count III] is a state law claim, and all federal claims against the Bank upon which pendent jurisdiction was based have been dismissed;" and (2) New Jersey law on respondeat superior in a case such as this is unsettled.  (Id.)  This argument ignores the fact that the Court has original jurisdiction over Count III pursuant to 28 U.S.C. § 1332.  Discretion on exercising supplemental jurisdiction is irrelevant under the circumstances.

      B.      <u>Siemens' Cross-Motion for Summary Judgment under Apparent Authority</u>

Siemens asserts that "under other basic agency principles[,] PNC Back may also be held liable for Tanner's fraud," and seeks summary judgment on Count III in its favor.  PNC argues that Siemens is prohibited from making this argument because Count III does not allege apparent authority but rather respondeat superior.  (Deft's Reply and Opposition to Pltf's Cross-Motion, at 6.)  The Court need not decide whether Siemens made a binding election because neither theory

of vicarious liability applies.

Apparent authority arises when a principal "acts in such a manner as to convey the impression to a third party that the agent has certain power which he may or not possess." Lobiondo v. O'Callaghan, 357 N.J. Super. 488, 498, 815 A.2d 1013 (App. Div. 2003) (citing Rodriguez v. Hudson County Collision Co., 296 N.J. Super. 213, 220, 686 A.2d 776 (App. Div.1997)) (internal quotations omitted). "Under the doctrine of apparent authority, [t]he principal is bound by the acts of his agent within the apparent authority which he knowingly permits the agent to assume, or which he holds the agent out to the public as possessing." Id. New Jersey courts have found that the doctrine of apparent authority may apply in those cases where the agent's conduct is fraudulent. Gennari v. Weichert Co. Realtors, 288 N.J. Super 504, 547, 672 A.2d 1190 (App. Div. 1996) aff'd and modified, 148 N.J. 582, 691 A.2d 198 (1997).

Siemens argues that PNC is vicariously liable for Tanner's wrongful conduct because PNC placed her in the position of head teller which enabled her, cloaked with apparent authority to cash non-customer checks, to commit a fraud upon Siemens. (Pltf's Brief in Opposition and in Support of Cross-Motion, at 12.) Further Siemens alleges that "even if [PNC] was innocent, and even if Tanner was acting solely for her own benefit, liability still attaches to [PNC] for her fraud against Siemens under these circumstances." (Id. at 12-13) (relying on Restatement (Second) Agency § 261 cmt. a.) PNC asserts that apparent authority law does not support Siemens' proposition because in New Jersey "apparent authority cannot arise from the acts of the agent but instead requires an affirmative act of the principal" that leads the third-party to "reasonably believe that the agent has authority to commit the act complained of." (Deft's Brief in Reply and in Opposition to Pltf's Cross-Motion, at 6.) Under these facts, PNC argues,

Williams was the "third-party" and it would be just "plain silly" to conclude that PNC's actions somehow led Williams to believe that Tanner had authority to process fraudulent checks. (Id.)

There is no way that Siemens can be viewed as an innocent third party because as a corporation it must be viewed through the actions of its agent, and the only person who can play the role of its agent is Williams, who is certainly not innocent. (Alternatively Williams could be viewed as acting outside her scope of employment at the time she cashed the fraudulently produced payroll checks. In this scenario, Siemens is still prevented from obtaining innocent third-party status.) Because apparent authority protects only the innocent third party and not all interested parties, PNC is not liable to Siemens for Tanner's fraudulent conduct under apparent authority.

Based on facts not in dispute, the Court concludes that Siemens cannot demonstrate that PNC is liable under a general agency theory of apparent authority.

## **CONCLUSION**

For the foregoing reasons, PNC's motion for summary judgment is **granted** and Siemens' cross-motion for summary judgment is **denied**. Accordingly Count III of the complaint is dismissed. An appropriate order will be entered.

Date:   June 24, 2005

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.